IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No.: 14-20344 |
| Plaintiff, | |
| | 7 USC § 2024(b)(1) |
| vs. | 18 USC § 371 |
| | 18 USC § 641 |
| RAY CHISM III, and | 18 USC § 1001 |
| RENITA LITTLE, | 18 USC § 982 (forfeiture) |
| Defendants. | |

# INDICTMENT

**THE GRAND JURY CHARGES:**

## COUNT 1
### (Conspiracy to Commit SNAP Benefit Fraud)

**Introduction**

At all times relevant to this Indictment:

1. The "Supplemental Nutrition Assistance Program" (hereinafter "SNAP"), formerly known as the Food Stamp Program, is a program established and funded by the United States Government to alleviate hunger and malnutrition among low- and middle-income families by increasing their food-purchasing power and ability. The United States Department of Agriculture (USDA) administers SNAP through the Food and Nutrition Service (FNS), providing federal funds to state governments that subsequently distribute the money to qualifying families for the purchase of food.

2. The State of Tennessee, acting as an agent of the United States Government, distributes federal SNAP funds through the Tennessee Department of Human Services (TDHS). TDHS provides qualifying individuals with a rechargeable card called an

Electronic Benefits Transfer Card (EBT Card). EBT Cards are credited with a certain dollar amount each month for the named cardholder to use for the purchase of eligible food items and cannot be redeemed for cash.

3. FNS authorizes certain retailers to accept SNAP EBT cards from authorized recipients for eligible food items. The SNAP EBT card system is a computer based system through which the SNAP benefits authorization is received from a computer through the point-of-sale terminal located at each individual retailer. In order for a recipient to access their benefits to purchase eligible food items, they must present their EBT card or account number to a FNS-authorized retailer. The retailer then swipes the EBT card or enters the account number and PIN number through the store's point-of-sale terminal, which records the EBT card number, date, time, and amount of the transaction. EBT benefits are non-transferrable.

4. USDA funds are held at the Federal Reserve Bank in Richmond, Virginia. All EBT transactions nationwide are reimbursed with funds held at this location and electronically transferred to the processing entity's bank account, wherever that account is maintained.

5. Maxi Foods, also known as Save More Grocery Store, is located in Memphis, Tennessee, and is authorized to accept EBT payments for approved food items. Maxi Foods maintained a bank account at Tri-State Bank, with branches in the Western District of Tennessee. Fidelity Information Services or J.P. Morgan facilitated the deposit, by electronic fund transfer, of SNAP redemption funds from USDA into this account. Maxi Foods was operated by Chism Trail and REM Group.

6. Chism Express (hereinafter, Chism Express) and Car Wash is a business located at 1614 East Shelby Drive, in Memphis, Tennessee. RAY CHISM III is the owner of Chism Express.

## Conspiracy

7. From at least in or about October 2011 and continuing thereafter until in or about December 2013, in the Western District of Tennessee and elsewhere,

## RAY CHISM III

and other persons both known and unknown to the Grand Jury, knowingly and willfully conspired and agreed together and with each other, to defraud the United States by impeding, impairing, obstructing and defeating by deceit, trickery and dishonest means the lawful governmental functions of the USDA and FNS in the administration and oversight of SNAP; and to commit offenses against the United States, specifically, violations of Title 18, United States Code, Section 641 (Theft of Government Property) and violations of Title 7, United States Code, Section 2024(b)(1) (SNAP Benefit Fraud).

## Object of the Conspiracy

8. The object of the conspiracy was for the defendants to profit financially by purchasing SNAP benefits from recipients for cash in amounts less than the face value of the benefits, and then redeeming SNAP benefits at full monetary value.

## Manner and Means of the Conspiracy

9. It was part of the conspiracy that RAY CHISM III recruited individuals who had SNAP EBT benefits for the purpose of redeeming SNAP benefits for cash.

10. It was part of the conspiracy that RAY CHISM III paid cash to these individuals for their SNAP EBT cards and/or account numbers and pins. RAY CHISM III would take the

cards and/or account numbers and pins to Maxi Foods for the purpose of redeeming SNAP benefits for cash.

11. It was part of the conspiracy that RAY CHISM III paid or caused to be paid money to others to obtain the EBT cards, account numbers, and pins. Thereafter, RAY CHISM III and others engaged in fictional and fraudulent transactions pertaining to food items allegedly purchased at Maxi Foods. In conducting these fraudulent SNAP transactions, RAY CHISM III used or caused the use of the EBT cards, accounts, and pins he had purchased to obtain the full monetary value of the customers' SNAP benefits.

12. It was further a part of the conspiracy that RAY CHISM III met with others at Chism Express for the purpose of exchanging EBT cards, account numbers and pins for cash.

13. It was further a part of the conspiracy that RAY CHISM III and others caused money for redemptions from fraudulent SNAP transactions to be wired into the bank account of Maxi Foods.

14. It was further a part of the conspiracy that RAY CHISM III and others engaged, participated, joined, and aided and abetted each other in the scheme that from in or about October 2011 continuing through December 2013, unlawfully acquired or obtained federal funds.

15. It was further a part of the conspiracy that RAY CHISM III and others would and did perform acts and make statements to hide and conceal, and cause to be hidden and concealed, the purposes of, and the acts done in furtherance of, said conspiracy.

### Overt Acts

In furtherance of the conspiracy and to affect the objects thereof, at least one of the following overt acts was committed in the Western District of Tennessee:

16. On or about November 16, 2011, RAY CHISM III paid approximately $405.00 in cash to A.A., and obtained in exchange approximately $585.00 worth of SNAP benefits to redeem from the account ending in -9225.

17. On or about August 9, 2012, RAY CHISM III paid approximately $450.00 in cash to E.P., and obtained in exchange approximately $651.00 worth of SNAP benefits to redeem from the account ending in -4535.

18. On or about September 6, 2012, RAY CHISM III paid approximately $540.00 in cash to A.A., and obtained in exchange approximately $780.00 worth of SNAP benefits to redeem from the account ending in -7215.

19. On or about April 8, 2013, RAY CHISM III paid approximately $450.00 in cash to M.D., and obtained in exchange approximately $650.00 worth of SNAP benefits to redeem from the account ending in -3943.

20. On or about August 12, 2013, RAY CHISM III paid approximately $270.00 in cash to A.A., and obtained in exchange approximately $390.00 worth of SNAP benefits to redeem from the account ending in -4822.

21. The allegations in Counts 2 through 6 are alleged and incorporated as though fully set forth herein as separate overt acts.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 2 - 6
### (SNAP Benefit Fraud)

1) The allegations in paragraphs one through six of Count 1 are alleged and incorporated as though fully set forth herein.

2) On or about the dates set forth below, in the Western District of Tennessee and elsewhere,

## RAY CHISM III

the defendant, being aided and abetted by others known and unknown to the Grand Jury, knowingly used, transferred, acquired and possessed SNAP benefits having a value of $100.00 or more, in a manner contrary to the provisions of Chapter 51 of Title 7, United States Code, and Chapter II, Part 271 *et. seq.* of Title 7, Code of Federal Regulations, that is, the defendant knowingly and unlawfully exchanged SNAP benefits for cash.

| COUNT | DATE | SNAP BENEFIT ACQUIRED | EBT CARD NUMBER |
|---|---|---|---|
| 2 | 11/16/2011 | $585.63 | -9225 |
| 3 | 08/09/2012 | $651.23 | -4535 |
| 4 | 09/06/2012 | $780.12 | -7215 |
| 5 | 04/08/2013 | $650.12 | -3943 |
| 6 | 08/12/2013 | $390.11 | -4822 |

All in violation of Title 7, United States Code, Section 2024(b) and Section 2.

## COUNT 7
### (Theft of Public Money or Property)

1. From at least in or about October, 2011, and continuing thereafter until in or about December 2013, in the Western District of Tennessee and elsewhere,

## RAYCHISM III

the defendant, being aided and abetted by others known and unknown to the Grand Jury, willfully and knowingly did steal and purloin and convert to his use or the use of another federal funds of the United States Department of Agriculture, said federal funds having an estimated aggregate value of greater than $1,000.00, and being the property of the United States; all in violation of Title 18, United States Code, Sections 641 and 2.

# COUNT 8
## (Conspiracy to Commit Child Care Benefit Fraud)

### Introduction

At all times relevant to this Indictment:

1. The "Child Care Certificate Program" (CCCP), also known as the "Certificate Program", is a federally funded program administered by the United States Department of Health and Human Services (HHS) that provides federal funds to state governments to assist needy families with childcare costs. To be eligible for the "Certificate Program", parents need to be unemployed and actively seeking work or underemployed and working at low-wage jobs. The United States administers the "Certificate Program," by providing federal funds to state governments that subsequently reimburse entities caring for children from qualifying families.

2. The State of Tennessee, acting as an agent of the United States Government, distributes "Certificate Program" funds through Tennessee Department of Human Services (TDHS). Daycares are required to apply and be approved by TDHS before they are entitled to receive reimbursements under the "Certificate Program". Each child who receives benefits under the program must apply and be approved by TDHS. TDHS issues certificates to each eligible child who participates in the "Certificate Program". Daycare programs receive reimbursement only if childcare is provided to the enrolled child and the daycare has the child's certificate on file. Daycare operators submit attendance records, known as enrollment attendance verification reports (EAVs), at regular intervals.

3.  The "Child and Adult Care Feeding Program" (CACFP), which is administered by FNS, an agency of the USDA, is a federal program established to make funding available to daycare and after-school childcare programs to provide nutritious meals and snacks to qualifying children through age twelve (12). CACFP provides federal funds to state governments that then act as an agent of the federal government. State governments use the federal money to reimburse approved institutions for the cost of providing food to eligible children.

4.  Helping Hands Enrichment Center was a daycare located in Memphis, Tennessee, that was approved by TDHS to provide daycare services for children under the "Certificate Program" and the "Child and Adult Care Feeding Program".

5.  Helping Hands maintained accounts at Paragon Bank and SunTrust Bank, with branches in the Western District of Tennessee. DHS or its authorized agent initiated the deposit, by electronic fund transfer, of CCCP redemptions into these accounts.

6.  Chism Express Car Wash. Located at 1614 East Shelby Drive, Memphis, Tennessee, is owned and operated by RAY CHISM III.

### Conspiracy

7.  From at least in or about October 2011 and continuing thereafter until in or about December 2013, in the Western District of Tennessee and elsewhere,

**RAY CHISM III and RENITA LITTLE**

and other persons both known and unknown to the Grand Jury, knowingly and willfully conspired and agreed together and with each other, to defraud the United States by impeding, impairing, obstructing and defeating by deceit, trickery and dishonest means the lawful governmental functions of the United States Department of Health and Human

8

Services, in the administration and oversight of Child Care Certificate Program; and to commit offenses against the United States, specifically, violations of Title 18, United States Code, Section 641, Theft of Public Property, and Section 1001, False Statements.

## Object of the Conspiracy

8. The object of the conspiracy was for the defendants to profit financially by submitting false and fraudulent claims to TDHS for reimbursement for childcare services not provided.

## Manner and Means of the Conspiracy

9. It was part of the conspiracy that RAY CHISM III found parents who were eligible to obtain childcare benefits through CCCP. The defendants paid the parents for their daycare certificate(s) obtained from TDHS.

10. It was part of the conspiracy that RAY CHISM III located parents who qualified for CCCP benefits provided the parents obtained employment. The defendant helped these parents obtain certificates for their children by fraudulentlsy certifying that each of these parents worked at one of several businesses owned by the defendants and/or their relatives, even though the parents did not actually work for them. Once the parents had obtained certificates, the defendants would take possession of the certificates and use them to claim reimbursement for child care that was not provided.

11. It was part of the conspiracy that RAY CHISM III falsified and caused to be falsified attendance records at Helping Hands.

12. It was part of the conspiracy that RAY CHISM III submitted and caused to be submitted fraudulent records to TDHS in that the records misrepresented the number of children in attendance at Helping Hands.

9

13. It was part of the conspiracy that RAYCHISM III caused documents to be filed with TDHS that fraudulently identified someone other than RAY CHISM III as the owner of Helping Hands and as the person responsible for ensuring compliance with TDHS policies and procedures.

14. It was further a part of the conspiracy that RAY CHISM III and RENITA LITTLE caused the manufacture of food receipts, indicating food had been purchased to feed children at Helping Hands when in fact, food had not been purchased and the number of children claimed had not attended.

15. It was further a part of the conspiracy that RAY CHISM III concealed and attempted to conceal his ownership, management, and control of Helping Hands.

### Overt Acts

In furtherance of the conspiracy and to affect the objects thereof, at least one of the following overt acts was committed in the Western District of Tennessee:

15. Beginning in or about October 2011, and continuing through in or about December 2013, RAY CHISM III and RENITA LITTLE, paid or caused to be paid cash to parents whose children were on the CCCP and enrolled at Helping Hands but did not actually attend Helping Hands.

16. From in or about March 30, 2012, through in or about November, 2013, RAY CHISM provided M.D., a parent of children on the CCCP enrolled at Helping Hands, with verification of employment at a CHISM family business, when in fact, M.D. did not work there.

17. From in or about May 14, 2012, through in or about November 23, 2012, RAY CHISM provided A.P., a parent of children on the CCCP enrolled at Helping Hands, with

10

verification of employment at a CHISM family business, when in fact, A.P. did not work there.

18. On or about November 28, 2011, RAY CHISM III sought reimbursement under the CCCP by reporting or causing to be reported the attendance at Helping Hands of A.A.'s four children during the month of November 2011, when in fact, they did not attend.

19. On or about March 19, 2012, RAY CHISM III sought reimbursement under the CCCP by reporting or causing to be reported the attendance at Helping Hands of A.A.'s four children during the month of March 2012, when in fact, they did not attend.

20. On or about June 12, 2012, RAY CHISM III sought reimbursement under the CCCP by reporting or causing to be reported the attendance at Helping Hands of A.P.'s two children during the month of June 2012, when in fact, they did not attend.

21. On or about January 22, 2013, RAY CHISM III sought reimbursement under the CCCP by reporting or causing to be reported the attendance at Helping Hands of M.D.'s four children during the month of January 2013, when in fact, they did not attend.

22. On or about April 15, 2013, RAY CHISM III sought reimbursement under the CCCP by reporting or causing to be reported the attendance at Helping Hands of M.D.'s four children during the month of April 2013, when in fact, they did not attend.

23. On or about October 1, 2013, RAY CHISM III sought reimbursement under the CCCP by reporting or causing to be reported the attendance at Helping Hands of M.D.'s four children during the month of September 2013, when in fact, they did not attend.

24. In or about May, 2013, RENITA LITTLE took a Helping Hands attendance log to M.D. for M.D. to sign, certifying that M.D.'s children had attended Helping Hands during the month of May, 2013, when in fact, they did not attend.

25. In or about August, 2013, RENITA LITTLE took a Helping Hands attendance log to M.D. for M.D. to sign, certifying that M.D.'s children had attended Helping Hands during the month of August, 2013, when in fact, they did not attend.

26. In or about November, 2013, RENITA LITTLE took a Helping Hands attendance log to M.D. for M.D. to sign, certifying that M.D.'s children had attended Helping Hands during the month of November, 2013, when in fact, they did not attend.

27. The allegations in Counts 9 through 18 are alleged and incorporated as though fully set forth herein as separate overt acts.

All in violation of Title 18, United States Code, Section 371.

## COUNT 9

### 18 U.S.C. § 641 – Theft of Public Money or Property

1. From at least in or about October, 2011, and continuing thereafter until in or about December, 2013, in the Western District of Tennessee and elsewhere,

### RAY CHISM III and RENITA LITTLE

the defendants, each aiding and abetting each other, willfully and knowingly did steal and purloin and convert to his use or the use of another federal funds of the Child Care Certificate Program of the Department of Health and Human Services, with an estimated aggregate value of approximately $676,000.70, and being the property of the United States; all in violation of Title 18, United States Code, Section 641 and Section 2.

## COUNT 10 - 18

### 18 U.S.C. § 1001 – False Statements - CCCP

1. From in or about October, 2011, to in or about December 2013, in the Western District of Tennessee and elsewhere,

## RAY CHISM III and RENITA LITTLE

the defendants, caused and did willfully and knowingly falsify, conceal, and cover up by trick, scheme, and device a material fact in a matter within the jurisdiction of the Department of Health and Human Services by submitting claims for reimbursement for the cost of child care under the Certificate Program and knowing child care had not actually been provided to program beneficiaries:

| COUNT | DATE | EAV PERIOD | FALSIFIED ATTENDANCE |
|---|---|---|---|
| 10 | 11/01/2011 | 10/16/2011 – 10/29/2011 | four children of A.A. |
| 11 | 01/23/2012 | 01/08/2012 – 01/21/2012 | four children of A.A. |
| 12 | 04/16/2012 | 04/01/2012 – 04/14/2012 | four children of A.A. |
| 13 | 08/07/2012 | 07/22/2012 – 08/04/2012 | two children of A.P. |
| 14 | 10/15/2012 | 09/30/2012 – 10/13/2012 | two children of A.P. |
| 15 | 02/19/2013 | 02/03/2013 – 02/16/2013 | two children of A.P. |
| 16 | 05/28/2013 | 05/12/2013 – 05/25/2013 | four children of M.D. |
| 17 | 08/19/2013 | 08/04/2013 – 08/17/2013 | four children of M.D. |
| 18 | 11/12/2013 | 10/27/2013 – 11/09/2013 | four children of M.D. |

All in violation of Title 18, United States Code, Section 1001 and Section 2.

## NOTICE OF INTENT TO SEEK FORFEITURE

1. The allegations contained in Counts 1 through 18 of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 7, United States Code, Section 2024(f), Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

2. Upon conviction of one or more of the felony offenses in violation of Title 18, United States Code, Sections 371 and 641 as alleged in Counts 1 and 7 of the Indictment, the defendants shall forfeit to the United States all property, real and personal, which constitutes or is derived from proceeds traceable to such violations. Such property includes, but is not limited to, the following:

> The sum of one million nine hundred one thousand seven hundred eleven dollars ($1,901,711.00) in U.S. funds, representing the aggregate of the proceeds traceable to the violations alleged in Counts 1 and 7, for which the defendants are jointly and severally liable.

3. Upon conviction of one or more of the felony offenses in violation of Title 7, United States Code, Section 2024(b) as alleged in Counts 2 through 6 of the Indictment, the defendants shall forfeit to the United States all property, real and personal, which constitutes or is derived from proceeds traceable to such violation, and all property, real and personal, used in a transaction or attempted transaction to commit, or to facilitate the commission of the offenses.

4. Upon conviction of one or more of the felony offenses in violation of Title 18, United States Code, Sections 371 and 641 as alleged in Counts 8 and 9 of the Indictment, the defendants shall forfeit to the United States all property, real and personal, which constitutes or is derived from proceeds traceable to such violation. Such property includes, but is not limited to, the following:

> The sum of six hundred seventy-six thousand dollars seventy cents ($676,000.70) in U.S. funds, representing the aggregate of the proceeds traceable to the violations alleged in Counts 8 and 9, for which the defendants are jointly and severally liable.

### Substitute Assets

5. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 28 U.S.C. § 2461(c), shall be entitled to forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

All pursuant to Title 7, United States Code, Section 2024(f), Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

**A TRUE BILL:**

_____
**FOREPERSON**

_____
**EDWARD L. STANTON III**
**UNITED STATES ATTORNEY**

_____
**DATE**